UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOCELYN ETTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:16-cv-00406-JMS-MJD |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Jocelyn Etter requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act").[1] *See* 42 U.S.C. §§ 416(i), 423(d). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **AFFIRM** the decision of the Commissioner.

### I. Background

Etter filed her application for DIB on December 17, 2012, alleging December 31, 2001 as the onset date of disability. [R. at 150.] In her disability report filed in conjunction with her application, Etter listed severe spinal stenosis with severe dural sac compression as her disabling condition.[2] [R. at 165.] Etter's application was denied initially on February 25, 2013, [R. at 70],

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[2] Etter recited the relevant factual and medical background in her opening brief. [*See* Dkt. 11.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 16.] Because these facts involve Etter's sensitive and otherwise confidential medical information, the Court will incorporate by reference the factual background the parties' briefs and articulate specific facts as needed below.

and upon reconsideration on May 21, 2013, [R. at 80]. Etter timely requested a hearing on her application, which was held before Administrative Law Judge James R. Norris ("ALJ") on September 19, 2014. [R. at 31.] The ALJ issued his decision on October 17, 2014, again denying Etter's application for DIB. [R. at 28–30.] On December 16, 2015 the Appeals Council denied Etter's request to review the ALJ's decision, making it the final decision of the Commissioner for the purposes of judicial review. [R. at 3–5.] Etter timely filed her Complaint with this Court on February 19, 2016, seeking judicial review of the Commissioner's decision. [Dkt. 1.]

## II.    Legal Standard

To be eligible for DIB, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, or one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform her past relevant work or has no past relevant work but can perform certain other

available work, she is not disabled.  20 C.F.R. § 404.1520.  Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work related activities.  S.S.R. 96-8p, 1996 WL 374184.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred."  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion.  *Overman v. Astrue*, 546 F.2d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  The ALJ "need not contain a complete written evaluation of every piece of evidence."  *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence."  *Herron v. Shalala* 19 F.3d 329, 333 (7th Cir. 1997).  To be affirmed, the ALJ must articulate his analysis of the evidence in his decision.  The ALJ must "provide some glimpse into his reasoning" and "build an accurate logical bridge from the evidence to his conclusion."  *Dixon*, 270 F.3d at 1176.  The scope of review is confined to the rationale offered by the ALJ.  *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

### III.   The ALJ's Decision

In his decision, the ALJ first determined that Etter met the insured status requirements of the Act through June 30, 2015 and had not engaged in substantial gainful activity since

December 31, 2006.  [R. at 33.]  At step two, the ALJ found Etter's severe impairments to include "spinal stenosis with dual [sic] sac compression and mild L5 radiculopathy, polycystic ovarian syndrome, and polycystic kidneys."  [*Id.*]  At step three the ALJ found that Etter did not have an impairment or combination of impairments that meets or medically equals a Listing and evaluated Listing 1.04 for spinal disorders.  [*Id.*]

Before step four, "after careful consideration of the entire record," the ALJ determined that Etter had the RFC to perform "less than a full range of light work."  [R. at 34.]  Specifically, the ALJ found the following:

> [Etter] can lift and carry twenty pounds occasionally and ten pounds frequently; can sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday, with normal breaks.  She cannot climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl, and must avoid excessive industrial vibration or excessive cold and workplace hazards such as unprotected heights and dangerous moving machinery.

[*Id.*]  At step four, the ALJ found that Etter could perform her past relevant work as a receptionist and office manager.  [R. at 38.]  Based on these findings, the ALJ concluded Etter was not disabled under the Act.  [*Id.*]

### IV.   Discussion

Etter asserts four arguments as to why the decision of the Commissioner should be reversed.  First, Etter argues that the ALJ failed to consider her obesity.  Second, Etter argues that the ALJ's evaluation of Listing 1.04 was insufficient.  Third, Etter argues that the ALJ's RFC determination is undermined by erroneous assessments of the medical opinions.  Fourth, Etter argues that the ALJ erred in finding Etter "not entirely credible."  [R. 36; Dkt. 11 at 21.]  The Court addresses each contention in turn

### A. Obesity

Etter maintains that the ALJ failed to consider and address her obesity and argues that her "obesity would further aggravate her other conditions." [Dkt. 11 at 14.] In support, Etter points to her Body Mass Index and several doctors' assessments of obesity. Etter argues that this omission requires remand. In response, the Commissioner argues that any error was harmless because the ALJ relied upon the opinion of a medical expert who considered Etter's weight in his expert opinion. In reply, Etter argues that the omission was not harmless because the expert only tangentially referenced Etter's weight. Etter further argues that the regulations required the ALJ to consider at step two whether Etter's obesity, alone or in combination with other impairments, is severe.

The ALJ must consider all impairments claimed by the claimant or otherwise supported by evidence. 20 C.F.R. § 404.1512(a). This includes evidence of obesity, which Social Security Ruling 02-1p explains must be considered in conjunction with other impairments throughout the five-step process. 2002 WL 34686281. To determine whether a claimant is obese—in SSA jargon, whether a claimant's obesity is a "medically determinable impairment"—the ALJ usually relies "on the judgment of a physician who has examined the claimant and reported his or her . . . weight and height. Thus, in the absence of evidence to the contrary in the case record, we will accept a diagnosis of obesity given by a treating source or by a consultative examiner." *Id.* at *3.

But, contrary to Etter's suggestion, the failure to comply with S.S.R. 02-1p does not require automatic reversal. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (applying harmless error review to failure to address obesity); *see Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) ("[W]e will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same."). Both parties in

5

support of their positions cite to the Seventh Circuit's opinion in *Skarbek*, which provides in relevant part:

> Although Skarbek did not specifically claim obesity as an impairment (either in his disability application or at his hearing), the references to his weight in his medical records were likely sufficient to alert the ALJ to the impairment. Despite this, any remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case. Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk. Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.

390 F.3d at 503. The court did not find reversible error in the ALJ's assessment of Skarbek's weight.

Consistent with **both parties'** representations,[3] the Court finds that *Skarbek* is perfectly applicable to the case at bar: Etter, like Skarbek, did not specifically claim obesity as an impairment in her disability application or at her hearing, [*see* R. at 45-60, 165]; as Etter points out, the medical evidence regarding her weight should have been sufficient to alert the ALJ of the need to address it, [*see, e.g.*, R. at 251, 297]. Additionally, the ALJ relied upon the opinion of at least one doctor who considered Etter's weight, [R. at 37], thus Etter's obesity "was factored indirectly into the ALJ's decision." *Skarbek*, 390 F.3d at 503. The critical point, however, as in *Skarbek*, is that Etter simply does not explain how the ALJ should have further accommodated her obesity and therefore fails to demonstrate that remand could have any impact on this issue. Instead, Etter states generally that "Plaintiff's obesity would further aggravate her other conditions." [Dkt. 11 at 14.] This level of generality was insufficient in *Skarbek* and is

---

[3] *Skarbek* is the lone case to which Etter cites in this section of her opening brief—purportedly in support of her argument—though she makes no effort to distinguish the facts of *Skarbek* from the facts in this case. [*See* Dkt. 11 at 14.] In her reply brief, Etter wholly ignores the four Seventh Circuit opinions to which the Commissioner cites, [Dkt. 16 at 3-4], and cites to no case law of her own, [Dkt. 28 at 2-3].

6

equally insufficient in this case. *See also, e.g.*, *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) ("She also fails to point to any other evidence suggesting that her obesity exacerbated her physical impairments."). The Court should therefore decline to reverse the ALJ's decision on this ground.

### B. Listing 1.04

Etter next argues that the ALJ improperly evaluated the evidence in determining that Etter did not meet Listing 1.04 for spinal disorders. In support, Etter argues that the ALJ found that Etter can walk normally (or, to borrow the ALJ's phraseology, Etter "has demonstrated the ability to ambulate with a normal gait," [R. at 33]), without considering the medical evidence of Etter's walking problems. Etter characterizes the ALJ's rejection of Listing 1.04 as "conclusory." [Dkt. 11 at 15.] In response, the Commissioner argues that the ALJ gave ample consideration to Etter's walking impediments and that Etter does not meet Listing 1.04. In reply, Etter reiterates her same arguments and further maintains that the Commissioner relies upon evidence the ALJ did not consider in violation of the *Chenery* doctrine in defending the ALJ's findings.

As with all listings, the claimant is required to demonstrate that her impairments "meet[s] *all* of the specified medical criteria" to satisfy Listing 1.04. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis original). Etter's argument can only be addressed to Listing 1.04C, since that is the only sublisting pertaining to the ability "to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. Listing 1.04C requires a showing of "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate

7

effectively, as defined in 1.00B2b." *Id.* Listing 1.00B2b in turn defines the phrase "inability to ambulate effectively":

> (1) Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient . . . independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. . . . The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* § 1.00B2b.

The ALJ does not need to address all medical evidence in evaluating a listing, *Taylor v. Barnhart*, 189 Fed. App'x 557, 561 (7th Cir. 2006) (citing *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005)), but "must discuss the listing by name and offer more than a perfunctory analysis of the listing," *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

The ALJ's analysis of Listing 1.04C is indeed short, providing in its entirety: "There is some evidence of lumbar stenosis with radiculopathy, but an EMG indicated it was mild. The claimant has had positive straight leg raising tests, [sic] has demonstrated the ability to ambulate with a normal gait." [R. at 33 (internal citation omitted).] If this were the extent of the ALJ's assessment of Etter's walking ability, Etter's argument that more was required would stand on firmer ground. But this was far from the entirety of the ALJ's assessment of Etter's walking ability, as the Commissioner points out. Rather, in the RFC discussion section, the ALJ discussed the conflicting evidence in the record regarding Etter's walking ability and concluded, again, that Etter "ambulates with a normal gait." [R. at 36 (internal citation omitted).]

8

While Etter is correct that the ALJ's complete analysis of her walking ability did not occur in the ALJ's evaluation of Listing 1.04C, Etter cites to no authority to support her implied premise that reversal is required because the discussion did not occur under the correct heading and fails to explain how the ALJ's later discussion of the **same issue** is insufficient. In fact, the case law supports the opposite. *See, e.g.*, *Schomas*, 732 F.3d at 708 ("Schomas's concern about the format of the ALJ's decision is unfounded."); *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013) ("This is not a situation . . . where the ALJ performed a cursory analysis and dismissed a line of evidence without any discussion."); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) ("If the ALJ has otherwise explained his conclusion adequately, the inclusion of [impermissible boilerplate] can be harmless."). Sending the case back for the ALJ to copy his discussion from one section and move it to another would be a waste of time and resources. The Court should therefore decline to reverse the ALJ's decision on this ground.

## C. RFC Determination

Etter argues that the ALJ erred in his weight assignments for the opinions of several treating and consulting physicians and that this failure undermines his RFC determination.[4] In support, Etter points to various shortcomings in the ALJ's analysis. With respect to Dr. Fish in particular, Etter argues that the ALJ improperly assigned little weight to his opinion because "Dr. Fish's assessment was not solely based on her history." [Dkt. 11 at 19.] Etter maintains that, had Dr. Fish's opinion been given proper weight, Etter would have been found disabled.

In response, the Commissioner argues that any error with respect to the opinions of consulting physicians and Dr. Francis was harmless because Etter's past relevant work requires a

---

[4] The Court notes that Etter cites to only one case in the five pages of her opening brief dedicated to this argument. [Dkt. 11 at 15-20.]

9

lower exertion level than that assigned by the doctors' opinions.  The Commissioner also argues that the ALJ properly assigned little weight to Dr. Fish's opinion because it was based at least in part upon Etter's self-reported history.  In reply, Etter argues that the ALJ's errors were not harmless and reiterates her argument that the ALJ's assessment of Dr. Fish's opinion was insufficient.

As the Commissioner points out, the ALJ found that Etter could perform her past relevant jobs as a receptionist and office manager, both of which require a sedentary level of exertion. [R. at 38.]  Therefore, as long as Etter's ability to perform sedentary work is supported by substantial evidence, the Court is required affirm the RFC determination.  *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) ("In any event, Mr. Diaz's ability to do sedentary work, which is clearly supported by substantial evidence, requires that we affirm the determination that Mr. Diaz is not disabled.").  A claimant may perform sedentary work if she is capable of "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally . . . ." 20 C.F.R. § 404.1567(a).  The ALJ's determinations on what weight to assign the medical opinions are entitled to substantial deference; the Court "will not . . . reweigh the evidence or substitute our judgment for that of the ALJ's." *Pepper*, 712 F.3d at 362.  In making these determinations, "[a]n ALJ may give less weight to an opinion that appears to rely heavily on the claimant's subjective complaints, even if the source of that opinion had examined the claimant." *Givens v. Colvin*, 551 F. App'x 855, 861 (7th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(3); *Filus*, 694 F.3d at 868).

The only opinion which may suggest that Etter could perform at a more limited level than sedentary is that of Dr. Fish, [R. at 292]; all of the other challenged medical opinions concluded

10

that Etter could perform at sedentary work at minimum, [R. at 48, 68, 78–79]. Dr. Fish, a consultative examining physician, opined that Etter's ability to stand and walk two out of eight hours a day was "variable—based on history, and observation, this would be possible for some days and not possible on others." [R. at 292.] Dr. Fish further opined that Etter would be able to carry 10 pounds and had good gross and fine motor skills. [*Id.*]

The ALJ explained that this opinion was entitled to little weight for several reasons, pointing, for example, to Dr. Fish's indication that "his opinion is at least partially based upon her history" and subjective allegations. [R. at 37.] This is borne out in Dr. Fish's medical assessment, which contains extensive elaboration of Etter's medical history and complaints. [R. at 290.] But the only portion of the medical opinion that could possibly suggest the longitudinal "variability" assigned by Dr. Fish is Etter's own complaints. [*Id.* (quoting Etter's statements that "[i]t's not the same every day" and that she has days where she cannot perform basic functions).] Contrary to Etter's unsupported argument that a doctor must base her findings "solely" upon a claimant's subjective complaints or medical history before the ALJ may reject it, [Dkt. 11 ("Therefore, Dr. Fish's assessment was not based solely on her history. Accordingly, the ALJ erred in using this to discredit Dr. Fish's opinion.")], the ALJ was entitled to assign limited weight to Dr. Fish's opinion for its apparent reliance upon Etter's subjective allegations and medical history. *Givens*, 551 F. App'x at 861 (affirming ALJ's rejection of opinion that "appear[ed] to rely heavily on" subjective complaints); *Filus*, 694 F.3d at 868 (affirming ALJ's assessment of medical opinion where ALJ "explained why he was discounting it" with "reasons with support in the record").

Etter points to no other medical opinion that would suggest that Etter requires more than a sedentary work restriction. Moreover, the ALJ engaged in discussion of objective evidence

11

that would support at minimum a sedentary work restriction, including medical observations of a normal gait. [R. at 36 (citing R. at 211, 213).]. Any error with respect to the ALJ's treatment of the medical opinions aside from Dr. Fish is therefore harmless because it would not change the result. *Schomas v. Colvin*, 732 F.3d 702, 708–09 (7th Cir. 2013) ("Our review of the record convinces us that the result would not change."); *Diaz*, 55 F.3d at 307. Under these circumstances, the Court should not reverse the ALJ for his assessment of the medical opinions.[5]

### D. Credibility Determination

Finally, Etter challenges the ALJ's credibility determination. Etter argues that the ALJ's finding that Etter was "not entirely credible" lacks sufficient support or is improperly founded in inconsistencies between Etter's complaints and the medical evidence. Etter also faults the ALJ for referencing a positive Waddell sign in his credibility assessment.[6] In response, the Commissioner argues that the ALJ engaged in ample discussion of the evidence such that his

---

[5] Etter expresses particular concern with Dr. Francis's opinion, which was assigned "great weight" by the ALJ. [R. at 37.] Dr. Francis testified at the hearing before the ALJ, opining in part: "Some doctors even out in California put this at a medium RFC. So I think, you know, it's either light or sedentary and some triers of fact would state that if claimant has children at home, that's at least a light RFC, I mean just taking care of them." [R. at 47.] The Court agrees that this portion of Dr. Francis's testimony is highly concerning. First, the SSA's regulations provide that the RFC is to be based upon "**all the relevant evidence in your case record.**" 20 C.F.R. § 404.1545(a). The Court cannot possibly fathom what the "doctors . . . out in California" have to do with the evidence in Etter's case record. Second, Dr. Francis's statement that "if claimant has children at home, that's at least a light RFC, I mean just taking care of them," is equally unsettling. The Seventh Circuit could not have been more clear about the impropriety of such a categorical conclusion:

> [E]xtrapolating from what people do at home, often out of necessity, to what they could do in a 40–hour–a–week job is perilous. At home one has much greater flexibility about when and how hard and how continuously to work; one can rest during the day (which one can't do in a 9–to–5 job); and sheer necessity may compel one to perform tasks at home no matter how painful, such as taking care of one's child.

*Forsythe v. Colvin*, 813 F.3d 677, 679 (7th Cir. 2016) (Posner, J.). Nonetheless, Etter's failure to cite to any medical opinion suggesting that Etter can only perform less than sedentary work, outside of Dr. Fish's properly-rejected opinion, means that any error in the ALJ's assessment of the medical opinions was harmless, as explained above.

[6] "Waddell signs are manifestations of pain resulting from specific maneuvers that should not induce back pain, and are used to identify patients reacting to 'psychosocial' factors, such as economics or social issues, including pending litigation." *Hilmes v. Barnhart*, 118 F. App'x 56, 58 (7th Cir. 2004).

credibility finding was not patently wrong. In reply, Etter cites back to her initial brief and again argues that the ALJ "did not consider all of the evidence in making his determination of Plaintiff's credibility." [Dkt. 17 at 6.]

Of course, the ALJ does not need to address every piece of evidence in his credibility determination. *See McKinzey*, 641 F.3d at 891. And the ALJ's credibility assessment warrants "special deference because the ALJ is in the best position to see and hear the witness and determine credibility," *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000), though a court has "greater freedom to review credibility determinations based on objective factors . . . rather than subjective considerations," *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005). While the ALJ may not disregard a claimant's testimony about the intensity of pain or its effect on her ability to work "solely because [it is] not substantiated by objective medical evidence," S.S.R. 96-7p, 1996 WL 374186,[7] the ALJ is still entitled to resolve any "discrepancies between the objective evidence and self-reports," *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). At bottom, the critical inquiry remains whether the ALJ's credibility determination is "reasoned and supported," as it may be overturned only if it is "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008). A determination is patently wrong if it "lacks and explanation or support." *Id.*

The ALJ in this case noted that "[t]he clinical signs" in Etter's case "have been somewhat inconsistent." [R. at 36.] In resolving the observed inconsistencies, the ALJ observed that Etter

---

[7] Etter explains that Social Security Ruling 96-7p was superseded in March 2016 by Social Security Ruling 16-3p, 2016 WL 119029, but that S.S.R. 16-3p is not retroactive. The Commissioner does not dispute this contention. The Court thus treats S.S.R. 96-7p as the operative ruling for this case, though the Court notes that the language in S.S.R. 16-3p is not substantially different, providing that the SSA "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* at *5.

"claimed a number of extreme limitations" that lacked medical support. [*Id.*] Among the ALJ's findings: Etter's MRI was not suggestive of a need for extreme limitations, her EMG "suggested only mild radiculopathy," and one of Etter's doctors reported that Etter "seemed to be exaggerating her symptoms."[8] [*Id.*] Etter does not challenge these findings, which are supported by citations to the record. This is not a situation where the ALJ disregarded Etter's statements "solely because they are not substantiated by objective medical evidence," as Etter suggests. [Dkt. 11 at 21-22 (quoting S.S. R. 96-7p).] Instead, the ALJ duly pointed out the discrepancies in the record between the objective evidence and self-reports and resolved them in a manner that falls short of patent error. *See Jones*, 623 F.3d at 1161. The Court is not permitted to reweigh the evidence as Etter requests and should therefore decline to reverse the ALJ's decision on this ground.

## V.   Conclusion

For the foregoing reasons, the Court should find that Etter has failed to demonstrate reversible error in the ALJ's determination that Etter is not disabled. The District Judge should therefore **AFFIRM** the Commissioner's decision. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. §

---

[8] Etter assails the ALJ's passing reference to Dr. Dunipace's positive Waddell signs assessment, citing to myriad case law from outside the Seventh Circuit. Leaving aside the fact that the Seventh Circuit has not adopted the Ninth Circuit's approach to evaluating Waddell's signs tests, *see, e.g.*, Secrest v. Astrue, No. 1:09-CV-00708-JMS-RLY, 2010 WL 2071360, at *5 (S.D. Ind. May 21, 2010), Etter's argument ignores several key facts from the relevant medical record. Most critically, Dr. Dunipace (aside from the Waddell signs issue) additionally determined that Etter had an "exaggerated response to palpation." [R. at 276.] Further, the Court declines Etter's invitation to assume that Dr. Dunipace's observation that "Waddel [sic] **signs are positive**," [*id.* (emphasis added)], means that less than a clinically-significant number of signs were positive, as apparently one unpublished decision from outside of the Seventh Circuit concluded, [Dkt. 11 at 23 (citing *Wick v. Barnhart*, 173 Fed. App'x 597, 598–99 (9th Cir. 2006) ("Moreover, Dr. Schroeder did not indicate how many positive Waddell signs Wick demonstrated or whether they were attributable to malingering rather than psychological conditions.")). In fact, the opposite assumption is far more reasonable—that a doctor would state that Waddell **signs** are positive only if a clinically-significant number of signs were positive. In the end, the Waddell signs finding was only one of several pieces of evidence relied upon by the ALJ in his credibility finding, which, as explained, was sufficient as a whole.

636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  23 SEP 2016

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.