UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOCELYN ETTER | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     vs. | ) | 1:16-cv-00406-JMS-MJD |
| | ) | |
| CAROLYN W. COLVIN, *Acting Commissioner* | ) | |
| *of the Social Security Administration*, | ) | |
|     *Defendant.* | ) | |

## ENTRY ON THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Jocelyn Etter applied for a period of disability and disability insurance benefits on December 19, 2012, alleging a disability onset date of December 31, 2006. [Filing No. 9-5 at 2.] After a series of administrative proceedings and appeals, including a hearing on September 19, 2014 before Administrative Law Judge James R. Norris (the "ALJ"), [Filing No. 9-2 at 44-61], the ALJ issued a finding on October 17, 2014 that Ms. Etter was not eligible for disability insurance benefits, [Filing No. 9-2 at 32-39]. Ms. Etter requested that the Appeals Council review the ALJ's decision and on December 16, 2015, the Appeals Council denied Ms. Etter's request. [Filing No. 9-2 at 2-6], rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"). 20 C.F.R. § 404.981. Ms. Etter then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's decision.

The Court referred the matter to the Magistrate Judge, who issued a Report and Recommendation on September 23, 2016. [Filing No. 19.] In the Report and Recommendation, the Magistrate Judge found that Ms. Etter failed to demonstrate reversible error in the ALJ's determination that Ms. Etter is not disabled, and recommended that the Court affirm the Commissioner's decision that Ms. Etter is not entitled to disability insurance benefits. [Filing No.

1

19.] Ms. Etter timely filed an Objection to the Magistrate Judge's Report and Recommendation, which is presently pending before the Court. [Filing No. 22.]

# I.
## STANDARD OF REVIEW

When the Court refers a dispositive matter to the Magistrate Judge – as it did here – a party may object to the Magistrate Judge's report and recommendation and "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R Civ. P. 72(b)(3).

In conducting its de novo review of the Magistrate Judge's Report and Recommendation, the Court will review this matter as it does other social security appeals. Specifically, the Court is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotation omitted).

The ALJ must apply the five-step sequential inquiry set forth in 20 C.F.R. § 404.1520(a)(4) to determine:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995) (citation omitted).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

# II.
## BACKGROUND

Ms. Etter was thirty years old at the time of her application for disability insurance benefits on December 19, 2012. [Filing No. 9-5 at 2.] She has past work experience as a glass fabricator, a receptionist, and an office manager. [Filing No. 9-2 at 58-59; Filing No. 9-6 at 52.] Ms. Etter claims she is disabled based on a variety of impairments, which will be discussed as necessary below.[1]

Using the five-step sequential evaluation set forth by the Social Security Administration ("SSA") in 20 C.F.R. § 404.1520(a)(4), the ALJ denied Ms. Etter's application for disability insurance benefits in an October 17, 2014 opinion. The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Etter had not engaged in substantial gainful activity[2] since the date she applied for supplemental security income. [Filing No. 9-2 at 34.]

- At Step Two, the ALJ found that Ms. Etter suffered from severe impairments including: spinal stenosis with dual sac compression and mild L5 radiculopathy, polycystic ovarian syndrome, and polycystic kidneys. [Filing No. 9-2 at 34.]

- At Step Three, the ALJ found that Ms. Etter did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. The ALJ concluded that Ms. Etter had the RFC to perform "less than a full range of light work." Specifically, the ALJ found that Ms. Etter can "lift and carry twenty pounds occasionally and ten pounds frequently; can sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday, with normal breaks. She cannot climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl, and must avoid

---

[1] Ms. Etter detailed pertinent facts in her opening brief, and the Commissioner did not dispute those facts. Because those facts implicate sensitive and otherwise confidential medical information concerning Ms. Etter, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.* involves significant physical or mental activities) and gainful (*i.e.* work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and 20 C.F.R. § 416.972(a).

4

excessive industrial vibration or excessive cold and workplace hazards such as unprotected heights and dangerous moving machinery." [Filing No. 9-2 at 34-35.]

- At Step Four, the ALJ found that Ms. Etter could perform her past relevant work as a receptionist and office manager, both of which require a sedentary level of exertion. [Filing No. 9-2 at 39.]

- Finally, the ALJ did not need to consider Step Five, because he had already concluded that Ms. Etter could perform her past relevant work as a receptionist and office manager. [Filing No. 19 at 33.]

Based on these findings, the ALJ concluded that Ms. Etter was not entitled to receive disability insurance benefits. [Filing No. 9-2 at 39.]

## III.
### DISCUSSION

Ms. Etter raises four main arguments in support of her request that the Court remand this matter to the SSA: (1) that the ALJ failed to consider and address her obesity, [Filing No. 11 at 12-14]; (2) that the ALJ did not properly evaluate the evidence in determining that she did not meet or equal Listing 1.04 relating to spinal disorders, [Filing No. 11 at 15]; (3) that the ALJ's RFC determination is not supported by the evidence, [Filing No. 11 at 15-20]; and (4) that the ALJ erred in finding Ms. Etter "not entirely credible," [Filing No. 11 at 21-25]. The Magistrate Judge rejected all of Ms. Etter's arguments in his Report and Recommendation, [Filing No. 19], and Ms. Etter reiterated those arguments in her Objection, [Filing No. 22]. The Commissioner did not respond to Ms. Etter's Objection. The Court will consider each of Ms. Etter's arguments in turn.

**A. Failure to Consider and Address Ms. Etter's Obesity**

In his opinion, the ALJ did not specifically discuss Ms. Etter's obesity but stated that he gave consideration to "the entire record" and "to all symptoms." [Filing No. 9-2 at 35.]

In the Report and Recommendation, the Magistrate Judge rejected Ms. Etter's argument that the ALJ did not address Ms. Etter's obesity. [Filing No. 19 at 5-7.] He found that Ms. Etter's

5

medical evidence regarding her weight should have been enough to alert the ALJ of Ms. Etter's obesity. [Filing No. 19 at 6.] Additionally, he found that the ALJ relied upon the opinion of at least one doctor who considered Ms. Etter's weight, and thus her weight "was factored indirectly into the ALJ's decision." [Filing No. 19 at 6.] The Magistrate Judge found it critical that Ms. Etter did not explain how the ALJ should have further accommodated her obesity and therefore determined that remand would be futile. The Magistrate Judge found that Ms. Etter should have directed the Court to evidence indicating how her obesity exacerbated her physical impairments. [Filing No. 19 at 7.]

Ms. Etter argues in her Objection that the ALJ's conclusion that she "simply does not explain how the ALJ should have further accommodated her obesity and therefore fails to demonstrate that remand could have any impact on this issue" draws too narrow of a conclusion regarding the implications of her obesity. [Filing No. 22 at 2.] Ms. Etter cites to evidence in the record from three physicians (Dr. Prince, Dr. Pease, and Dr. Dunipace) who she claims noted that her weight was a problem. [Filing No. 22 at 3.] Ms. Etter contends that the ALJ's and the Magistrate Judge's failure to consider her obesity stemmed from a misunderstanding of her medical conditions and the ALJ's "selective review of evidence." [Filing No. 22 at 4.]. Ms. Etter contends that the ALJ's decision would have been different had he properly considered Ms. Etter's obesity and how her obesity might impact her ability to perform work-related activities. [Filing No. 22 at 4-5.]

When determining whether an individual is disabled, the SSA will consider all evidence in the case record. 20 C.F.R. § 404.1520(a)(3). As explained by Social Security Ruling 02-1p, obesity must be considered in conjunction with all other impairments throughout the five-step sequential analysis. 2002 WL 34686281. Although the ALJ did not specifically delve into the

6

details of Ms. Etter's obesity, his failure to discuss this condition does not require an automatic reversal. *Prochaska,* 454 F.3d at 736 (ALJ's failure to consider obesity is harmless error where claimant did not "'specify how [her] obesity further impaired [her] ability to work,'" and where ALJ relied upon the entire record in making his decision) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)).

The Court agrees with the Magistrate Judge that Ms. Etter only generally states that her obesity would further aggravate her other conditions, and does not specifically explain why this is the case. Ms. Etter merely speculates that her obesity may worsen her conditions, which would impact her inability to work. Although Ms. Etter points out that three doctors noted her obesity, there is no evidence in the record that supports the conclusion that her impairments are further aggravated by her obesity. In sum, because Ms. Etter has not presented any evidence indicating that her obesity somehow exacerbates her medical conditions, remand is not warranted. The Court **OVERRULES** Ms. Etter's Objection to the Magistrate Judge's Report and Recommendation on this issue.

### B. Failure to Fully Consider Listing 1.04

The ALJ provided a brief discussion of Listing 1.04 in his Step 3 analysis, stating:

> The claimant's impairments, while severe, do not meet or equal a listing. In reaching this conclusion, consideration has been given to listing 1.04, but the claimant's degenerative disc disease does not meet or equal this listing. The record shows no evidence of nerve root compression or spinal arachnoiditis. There is some evidence of lumbar stenosis with radiculopathy, but an EMG indicated it was mild. The claimant has had positive straight leg raising tests, [and] has demonstrated the ability to ambulate with a normal gait….

[Filing No. 9-2 at 34.] The ALJ then went on in the section of his opinion dealing with the RFC determination to discuss Ms. Etter's medical records in detail. [Filing No. 9-2 at 36-38.]

7

In the Report and Recommendation, the Magistrate Judge found that only Listing 1.04C could potentially apply to Ms. Etter because it is the only sublisting relating to the ability "to ambulate effectively." [Filing No. 19 at 7.] The Magistrate Judge acknowledged that the ALJ's discussion of Listing 1.04 was "indeed short," but noted that in the RFC discussion section the ALJ "discussed the conflicting evidence in the record regarding Etter's walking ability and concluded, again, that Etter 'ambulates with a normal gait.'" [Filing No. 19 at 8.] The Magistrate Judge found that although the ALJ discussed Ms. Etter's walking ability in connection with her RFC, and not in the section of his opinion evaluating Listing 1.04C, the ALJ's discussion was adequate.

In her Objection, Ms. Etter raises two issues with the ALJ's evaluation of Listing 1.04 and the Report and Recommendation – that the ALJ and the Magistrate Judge did not address whether Ms. Etter "medically equaled" the Listing, and that the ALJ did not build a logical bridge from the evidence to his conclusion that Ms. Etter did not meet Listing 1.04. [Filing No. 22 at 6-8.]

  1. *Medical Equivalence*

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than [a] perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citations omitted). The listings specify the criteria for qualifying impairments. *Id.* (citing 20 C.F.R. § 404.1525(a)). A claimant may also satisfy a listing by showing that her impairment is accompanied by symptoms that are equal in severity to those described in the listing. *Minnick*, 775 F.3d at 935 (citing 20 C.F.R. § 404.1526). A finding of medical equivalence requires an expert's opinion on the issue. *Minnick*, 775 F.3d at 935 (citations omitted).

"Under a theory of presumptive liability, a claimant is eligible for benefits if he has a condition that meets or equals an impairment found in the Listing of Impairments. Each listing has a set of criteria which must be met for an impairment to be deemed conclusively disabling." *Kastner v. Astrue*, 697 F.3d 642, 646-47 (7th Cir. 2012) (citations omitted). "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett*, 381 F.3d at 670; *see* 20 C.F.R. § 404.1526(c) ("When we determine if your impairment equals a listing, we consider…the opinion given by one or more medical…consultants designated by the Commissioner"); SSR 96-6p, 1996 WL 374180, *3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight").

In her underlying brief, which the Magistrate Judge considered in formulating his Report and Recommendation, Ms. Etter argued that "the ALJ found that Plaintiff's condition did not meet or equal Listing 1.04," and that his finding was "based on an incomplete analysis." [Filing No. 11 at 15.] She reiterated those arguments in her reply brief. She did not however, make the argument raised in her Objection that the ALJ wholly failed to consider whether she medically equaled Listing 1.04. [Filing No. 17 at 3-4.] Instead, she raised this issue for the first time in her Objection.

The Seventh Circuit Court of Appeals has instructed that "district courts should not consider arguments not raised initially before the magistrate judge, even [when] their review…is *de novo*," and that there are "good reasons" for this rule, including that "[f]ailure to raise arguments will often mean that facts relevant to their resolution will not have been developed; [and] one of the parties may be prejudiced by the untimely introduction of an argument." *U.S. v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000). Additionally, "a willingness to consider new arguments at the

district court level would undercut the rule that the findings in a magistrate judge's report and recommendation are taken as established unless the party files objections to them." *Id.* The Court will not consider Ms. Etter's "medical equivalence" argument since she raised it for the first time in her Objection.

### 2. *Failure to Meet Listing 1.04*

Listing 1.04 describes spinal disorders "resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." *Minnick*, 775 F.3d at 935 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04). It also requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test." *Id.* The parties appear to agree that the only subpart of Listing 1.04 potentially applicable to Ms. Etter is Subpart C, which addresses "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

In her Objection, Ms. Etter contends that the Magistrate Judge erroneously found adequate the ALJ's focus on "a mere two examinations the ALJ stated showed she walked with a normal gait and the [Consultative Examiner] opinion stating [she] did not require an assistive device." [Filing No. 22 at 8.] Ms. Etter argues that the ALJ ignored medical records from Drs. Fish, Prince, and Pease which indicted that she had an antalgic gait, pain, a slow pace, and was unable to do tandem, heel, and toe walking. [Filing No. 22 at 8.] The ALJ need not address each piece of

10

medical evidence in setting forth his opinion. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). And while the ALJ must confront evidence that does not support his conclusion and explain why it was rejected, *id.*, the ALJ here did just that.

First, the ALJ acknowledged Dr. Fish's opinion that Ms. Etter had an antalgic gait with slow pace, but then explained that he was affording Dr. Fish's opinion little weight because his opinion was based in part on Ms. Etter's history and "[a]s discussed above, some of [her] allegations are very difficult to credit." [Filing No. 9-2 at 38.] He also noted that other medical records indicated that Ms. Etter ambulated with a normal gait, did not need an assistive device, was not in distress, and was "doing well." [Filing No. 9-2 at 37 (discussing Filing No. 9-7 at 7; Filing No. 9-7 at 10; Filing No. 9-7 at 47-48; Filing No. 9-7 at 50-52; Filing No. 9-7 at 91).]

Second, as to Dr. Prince, the ALJ noted that the nerve conduction study he performed was within normal limits, and that the EMG showed only a mild radiculopathy. [Filing No. 9-2 at 36.] The ALJ found that the EMG did not support Ms. Etter's claims that she sometimes needed a walker, had to crawl on certain days, and was completely incapacitated for four days a month. [Filing No. 9-2 at 37.]

Finally, the ALJ acknowledged information from Dr. Pease's records that Ms. Etter reported she could not exercise, kneel, put on socks or shoes, walk ten blocks, or walk a limited distance. [Filing No. 9-2 at 27.] And while the ALJ did not specifically acknowledge Dr. Pease's statement that Ms. Etter had a compensated gait, [Filing No. 9-7 at 119], he went on to list conflicting evidence (as discussed above) indicating that she had a normal gait and could ambulate without an assistive device. [Filing No. 9-2 at 37.]

The Court does not find it significant that the ALJ's discussion appears in his RFC analysis, rather than under the heading related to meeting Listing 1.04. Ms. Etter has not cited any authority

indicating that inclusion of the discussion later in the ALJ's opinion is an error warranting remand. To the contrary, the Court agrees with the Magistrate Judge that the ALJ adequately discussed whether Ms. Etter met Listing 1.04, and built a logical bridge from the evidence to his conclusion that she did not. Accordingly, Ms. Etter's Objection related the ALJ's Step 3 analysis is **OVERRULED**.

### C. RFC Determination

The ALJ discussed Ms. Etter's medical records, discounted the opinion of Dr. Fish, and found that Ms. Etter could perform less than a full range of light work – that she can "lift and carry twenty pounds occasionally and ten pounds frequently; can sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday, with normal breaks. She cannot climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl, and must avoid excessive industrial vibration or excessive cold and workplace hazards such as unprotected heights and dangerous moving machinery." [Filing No. 9-2 at 35.]

In the Report and Recommendation, the Magistrate Judge noted that the ALJ found that Ms. Etter could perform her past relevant sedentary work, and that as long as the evidence supports the conclusion that she can perform sedentary work then the RFC determination must be affirmed. [Filing No. 19 at 10.] The Magistrate Judge focused on Dr. Fish's opinion, finding that it was "[t]he only opinion which may suggest that Etter could perform at a more limited level than sedentary," because "all of the other challenged medical opinions concluded that Etter could perform at sedentary work at minimum." [Filing No. 19 at 10-11.] The Magistrate Judge pointed to the ALJ's discussion of Dr. Fish's opinion, and concluded that the ALJ adequately discussed the medical evidence, and that Ms. Etter did not point to any other evidence that would suggest she requires more than a sedentary work restriction. [Filing No. 19 at 11-12.]

12

In her Objection, Ms. Etter argues that the ALJ actually found she could perform light work, so he did not build a logical bridge from the evidence to the conclusion that she could perform sedentary work. [Filing No. 22 at 8-9.] She argues that the Report and Recommendation does not address "multiple arguments as to why the ALJ's Decision that [she] could perform sedentary work was not supported," that she set forth in her initial brief. [Filing No. 22 at 9.] She contends that Dr. Fish's opinion "would warrant a finding of disability," and that the Magistrate Judge did not consider all of her arguments regarding why Dr. Fish's opinion was entitled to greater weight. [Filing No. 22 at 9-10.] Ms. Etter also asserts that the Magistrate Judge erroneously found that the ALJ's decision is supported by Dr. Francis' opinion, because Dr. Francis' opinion is "teeming with problems." [Filing No. 22 at 10.]

The Court cannot "reweigh evidence…or, in general, substitute [its] own judgment for that of the [ALJ]." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). However, in determining an individual's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano*, 556 F.3d at 563. As discussed above, the Court does not find the ALJ's analysis of Dr. Fish's opinion problematic – the ALJ discussed why he was giving that opinion less weight, and his analysis is supported by the medical records.

The Court does find the ALJ's RFC analysis problematic in other respects, however. First, the ALJ concluded that Ms. Etter could perform light work and relied in part on the opinions of state agency reviewing physicians. [*See* Filing No. 9-2 at 38.] But the state agency reviewing physicians that the ALJ relies upon actually concluded that Ms. Etter could perform sedentary work, not light work. [Filing No. 9-3 at 9; Filing No. 9-3 at 19-20.] While the Court acknowledges that this may be harmless error since the ALJ also found that Ms. Etter could perform her past

13

relevant sedentary work, the fact that the ALJ mischaracterized the state agency reviewing physicians' conclusions undermines the Commissioner's position that the ALJ built a logical bridge from the evidence to his RFC finding.

Second, as Ms. Etter argued in her initial brief, the ALJ relies heavily on the hearing testimony of Dr. Francis even though Dr. Francis did not review several medical records from Dr. Pease – specifically, Exhibits 9F and 10F. [*See* [Filing No. 9-2 at 46](#) (Dr. Francis stating that he reviewed "up through 8F and 13E").] Ms. Etter's hearing took place before the date of the examination that was documented in Exhibit 10F, but Exhibit 9F documents visits Ms. Etter had with Dr. Pease that took place before her hearing. [*See* [Filing No. 9-2 at 44-61](#) (transcript from September 19, 2014 hearing); [Filing No. 9-7 at 101-15](#) (Exhibit 9F – records from Ms. Etter's visits with Dr. Pease from November 2012 to May 2014); [Filing No. 9-7 at 116-19](#) (Exhibit 10F – records from Ms. Etter's September 24, 2014 visit with Dr. Pease).] The records from Dr. Pease are in fact noted as exhibits to the ALJ's opinion, yet the ALJ did not acknowledge them or discuss them other than to note Ms. Etter's own assessment of her condition. [[Filing No. 9-2 at 36-37](#) (ALJ noting that Ms. Etter reported injections had been ineffective and she could not exercise, kneel, put on socks or shoes, walk ten blocks, or walk a limited distance).] In relying heavily on the opinion of Dr. Francis, who did not review these medical records from Dr. Pease, the ALJ effectively ignores Dr. Pease's findings that support Ms. Etter's disability claim. Most significantly, the ALJ does not discuss Dr. Pease's finding during the September 24, 2014 examination that Ms. Etter "is quite uncomfortable sitting in exam room," has "trouble sitting in one position," has "difficulty moving [and] standing straight," has a compensated gait, lumbar spine movement causes pain, has "degenerative disc disease that is worsening," has "about one good day a week," is "having trouble functioning," has "progressively gone downhill," has "had

multiple interventions with limited success," and that Dr. Pease does not "think these symptoms will get better and will term[inate]." [[Filing No. 9-7 at 118-19](#).] The ALJ does not explain why he relies heavily on Dr. Francis, who had not reviewed those records, or how those records support a finding that Ms. Etter can perform her past relevant sedentary work – much less how she can perform light work as outlined in the RFC. The ALJ need not reference each piece of evidence, but also may not ignore evidence that is inconsistent with his conclusion. [*Indoranto*, 374 F.3d at 474](#). Because the ALJ relies heavily on the opinion of Dr. Francis, who did not review and consider medical records from Dr. Pease that directly indicate Ms. Etter may have trouble performing even sedentary work, the Court finds that remand to consider those records and explain their potential significance is warranted. Accordingly, the Court **SUSTAINS** Ms. Etter's Objection to the Magistrate Judge's Report and Recommendation regarding the ALJ's RFC analysis.

The Court notes that Dr. Pease's September 24, 2014 records indicate that Ms. Etter's condition has worsened over time. [[Filing No. 9-7 at 119](#) (Dr. Pease noting that Ms. Etter has "progressively gone downhill").] Accordingly, even if on remand the ALJ concludes that those records indicate Ms. Etter is not able to perform her past relevant sedentary work as of that date, the records do not support a conclusion that she has been unable to do so since December 2006 – the date she claims she became disabled. This is an issue the parties and the ALJ should address on remand.

### D. Credibility

The ALJ found that Ms. Etter was not entirely credible and noted that one medical source found her response to palpitation to be exaggerated and that a Waddell's signs test (described by the ALJ as "a standard test for symptom magnification or malingering") was positive. [[Filing No. 9-2 at 37](#).]

In the Report and Recommendation, the Magistrate Judge found that the ALJ's credibility determination is entitled to special deference, and that the ALJ "duly pointed out the discrepancies in the record between the objective evidence and self-reports and resolved them in a manner that falls short of patent error." [Filing No. 19 at 14.]

Ms. Etter argues in her Objection that the ALJ should not have relied on the Waddell's signs test without providing a more thorough discussion. [Filing No. 22 at 12.] She also contends that the ALJ ignored other evidence that may have supported Ms. Etter's symptoms, such as her obesity. [Filing No. 22 at 13.]

Because the Court has concluded that this matter must be remanded for the ALJ to consider the appropriateness of Ms. Etter's RFC, the Court need not discuss the ALJ's credibility finding in great detail. The Court notes, however, that a credibility determination by the ALJ is given "considerable deference." *Prochaska*, 454 F.3d at 738. The ALJ's credibility determination will be reversed only if he fails to base the determination on grounds that are reasonable or supported by the evidence of record. *See Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). The Court notes that the ALJ supported his credibility determination by referencing medical records indicating that Ms. Etter was exaggerating her symptoms. While the ALJ should reconsider these findings on remand, it appears that he built a logical bridge to support his adverse credibility finding by sufficiently explaining why he found Ms. Etter to be "not entirely credible."[3]

---

[3] Because the Court rejected Ms. Etter's argument that the ALJ failed to consider whether she "medically equaled" Listing 1.04 solely on waiver grounds, on remand the ALJ should ensure that he does, in fact, adequately address that issue.

16

## IV.
### CONCLUSION

For the foregoing reasons, the Court **SUSTAINS IN PART** Ms. Etter's Objection, **VACATES** the ALJ's decision denying Ms. Etter benefits, and **REMANDS** this matter for further proceedings under 42 U.S.C. § 405(g). Final judgment will issue accordingly.

Date: 2/17/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**